**FLORIDA GAS TRANSMISSION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Nos. 88–4238 to 88–4242.**

United States Court of Appeals, Fifth Circuit.

June 27, 1989.

Frank R. Lindh, Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., for F.E.R.C.

John S. Anderson, Florida Gas Transmission, Houston, Tex., for Florida Gas Transmission Co. in Nos. 88–4238, 88–4240, 88–4241 and 88–4242.

Jerron Stevens, George F. Goolsby, Rob McMillin, Baker & Botts, Houston, Tex., for intervenor Monsanto Chemical Co.

Ellis K. Locher, Jr., Houston, Tex., for intervenor Enron Indus. Natural Gas in Nos. 88–4238 and 88–4241.

John S. Anderson, Ellis K. Locher, Jr., Houston, Tex., for intervenor Enron Indus. Natural Gas. in Nos. 88–4239 and 88–4242.

Jeron Steven, Baker & Botts, Thomas W. Pounds, Vice President and Gen. Counsel, American Distribution Co., Houston, Tex., for American Distribution Co.

Before CLARK, Chief Judge, BROWN and JOHNSON, Circuit Judges.

CLARK, Chief Judge:

Florida Gas Transmission Company (FGT) sought authorization from the Federal Energy Regulatory Commission (FERC) to provide interruptible transportation service to five of FGT's customers for terms of two to five years. FERC granted the requested authorizations, but limited the term of each grant to one year. FGT appeals from the five orders. FERC's imposition of a one-year term is unsubstantiated, and thus arbitrary and capricious. We vacate the orders appealed from and remand for further proceedings.

FGT, an interstate natural gas pipeline company, filed five separate rate applications with FERC for authorization to provide interruptible transportation service for five shippers. FGT requested FERC to authorize the transportation service for the full length of the corresponding sales contracts: five years in four of the cases, and two years in the fifth. In three of the applications, FGT also requested authorization to construct and operate facilities necessary for the requested transportation with the costs to be reimbursed by the shippers. In all other relevant respects, the substance of the five applications was identical.

FERC issued each of the requested certificates, but only for a one year term or until FGT accepted a blanket transportation certificate, whichever first occurred. In this appeal, which consolidates the five orders, FGT challenges FERC's application of a policy which has not been substantiated, either on the particular facts of these cases or industry-wide. In addition, one of FGT's customers, Monsanto Chemical Company, whose one year certificate has already expired, has intervened.

As an interstate pipeline, FGT is subject to section 7(c) of the Natural Gas Act,

which prohibits the transportation or sale of natural gas absent a certificate of public convenience and necessity issued by FERC. 15 U.S.C. § 717f; 18 C.F.R. § 284 (1988). A pipeline can request individual certificates authorizing specific transportation services, as FGT did in this case or, in addition to or in lieu of an individual certificate, may apply for a blanket transportation certificate pursuant to FERC Order No. 436. A blanket certificate permits a pipeline to offer transportation services on a self-implementing basis, provided such services are offered without undue discrimination or preference (in other words, the pipeline must become an "open access" pipeline). FERC is authorized to issue requested certificates of public convenience "authorizing the whole or any part of the service" for which the authority is sought by a pipeline. 15 U.S.C. § 717f(e). FERC's decision to grant only a one year term of authorization is reversible only if that decision is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S. C. § 706(2).

██ FERC justifies its action in this case solely on the grounds of a "policy" which would limit the duration of every individual transportation certificate to a one year term. FERC did not hear evidence on the need for, or the effect of, this one year limit in these five instances, but instead rested its decision on the stated policy alone. In FERC's own words, "the Commission [does not consider] it necessary to rely on particular facts and circumstances.... On the contrary, the Commission's policy of limiting the duration of individual certificates is essentially prophylactic in nature. It was reasonably adopted and has consistently been imposed without regard to the particular facts and circumstances in any given case." In denying FGT's appeal from the decision to limit the term of the requested certificates, FERC justified its policy as follows:

> This policy is based on our concern about the potential for undue discrimination in proposals to certificate individual transportation arrangements under section 7(c) of the [NGA]. It is also based on the fact that the industry is currently in a

transition period pending ultimate implementation of the blanket transportation policies adopted in Order Nos. 436 and 500. Pursuant to Order No. 436, the Commission imposed an "open access" condition upon pipelines obtaining blanket certificates of public convenience for transporting interstate gas. This condition was designed to prevent pipelines from refusing to transport third-party gas purchased from a seller competing with the pipeline.

41 F.E.R.C. ¶ 61,267, 61,681 (1988).

██ FERC is not required to decide every case on the individualized facts. It may invoke rules of general application in individual cases. *Shell Oil Co. v. FERC,* 707 F.2d 230, 234–35 (5th Cir.1983). Due process, however, guarantees that parties who will be affected by the general rule be given an opportunity to challenge the agency's action. When the rule is established through formal rulemaking, public notice and hearing provide the necessary protection. *Id.* at 235. But where, as here, the rule is established in individual adjudications, due process requires that affected parties be allowed to challenge the basis of the rule. *Id.* at 235–36. FERC must be able to substantiate the general rule.

FERC has not substantiated its policy to limit individual certification to one year in this case. FERC relies heavily upon the decision of the D.C. Circuit in *New Jersey Zinc Co. v. FERC,* 843 F.2d 1497 (D.C.Cir. 1988). Although the court in *New Jersey Zinc* did affirm FERC's imposition of a similar one year limit based solely on FERC's policy, the facts in that action are substantially different from those present in the cases at bar. Furthermore, they do not permit the extrapolation of a general rule. The affected pipeline in *New Jersey Zinc* was in the midst of converting to open access transportation. Permitting a long-term individual certificate could frustrate that conversion. FGT has never sought a blanket certificate.

FERC did not attempt to substantiate its general policy in *New Jersey Zinc.* Ironically, FERC supported the existence of its

policy before the D.C. Circuit by citing its ruling against FGT in this case. *Id.* at 1500. This circular process of reasoning can supply no logical support back to its source.

The mere statement that there is a prophylactic purpose to a limited term also fails to substantiate the policy. If FERC is concerned about the effect that long-term certificates might have if FGT accepts a blanket certificate pursuant to FERC Order No. 436, FERC could add a rider to the certificates, terminating authorization upon such acceptance. FERC provides no reasoned explanation why it rejected this suggested alternative.

FERC has not substantiated the application of its policy, either through the development of specific facts or by making a reasoned explanation. On the other hand, FERC's order is not without real consequences to FGT and its customers. The certificate authorizing service to Monsanto expired and was not timely renewed. Monsanto was required to write off the entire cost of the constructed transportation facilities in a one-year period, rather than over the five year life of its contract. Although the court was advised at argument that FERC finally did act to grant FGT's renewal request, compliance with accounting requirements surely had economic consequences that had to be borne or adjusted at unnecessary extra cost. Unless FERC is better able to cope with its backlog of authorization requests, FGT's other customers could be subject to the same problems. Even if the certificates are more promptly renewed, the filing fees for renewing the certificates each year for the remaining terms of the underlying contracts, assuming that the fees are not raised, will total nearly $100,000. Such filings and the consequent fees would not be necessary if the authorizations were granted for the terms applied for, subject to termination in the event of the issuance of a blanket certificate. The imposition of these unnecessary filings and costs make FERC's action arbitrary and capricious.

Accordingly, the orders appealed from are vacated and this cause is remanded for further consideration in light of this opinion.

VACATED and REMANDED.

JOHNSON, Circuit Judge, dissenting.

The majority today concludes that the imposition by FERC of a condition limiting the terms of certain certificates of public convenience and necessity granted to FGT constitutes arbitrary and capricious action on the part of FERC. Persuaded that, by so concluding, the majority is effectively substituting its judgment in this area for that of FERC, I respectfully dissent.

Initially, it should be noted that this Court has previously said that "[a]ny attack on a condition in a certificate issued by the Commission must confront the well-established principle that generally the Commission has *extremely broad authority* to condition certificates of public convenience and necessity." *Transcontinental Gas Pipe Line Corporation v. FERC,* 589 F.2d 186, 190 (5th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980) (emphasis added). Accordingly, in deference to the extremely broad authority of FERC in this area, this Court, in reviewing a decision of FERC to impose a condition on a certificate of public convenience, will affirm that decision unless the action of FERC is arbitrary, capricious, or otherwise not in accordance with the law.

Even further, and as recognized by the majority, in imposing such conditions, FERC may invoke rules of general application in individual cases. *Shell Oil Company v. FERC,* 707 F.2d 230, 234–35 (5th Cir.1983). The majority, however, states that "due process requires that affected parties be allowed to challenge the basis of the [general] rule," and that "FERC must be able to substantiate the general rule." The majority then concludes that FERC has failed to so justify the general rule applied to FGT in the instant case. It is this writer's view, however, that the majority errs in reaching the above conclusion as FERC has indeed substantiated the general rule applied to FGT; in fact, it is this writer's view that the majority merely disagrees with the justification advanced by

FERC for its implementation and application of the general rule.

Specifically, FERC justifies its blanket policy of imposing one year durational terms on certificates of public convenience and necessity on the basis of its concern to assure nondiscriminatory access to transportation. As articulated by FERC in its order affirming the orders of the Director in the instant case,

> This policy is based on our concern about the potential for undue discrimination in proposals to certificate individual transportation arrangements under section 7(c) of the [NGA]. It is also based on the fact that the industry is currently in a transition period pending ultimate implementation of the blanket transportation policies adopted in Order Nos. 436 and 500.

41 F.E.R.C. ¶ 61,267, 61,681 (1988) (footnote omitted).

Despite the attempts by the majority to distinguish it, the case recently decided by the D.C. Circuit, *New Jersey Zinc Company v. FERC*, 843 F.2d 1497 (D.C.Cir.1988), is persuasive in this area. In *New Jersey Zinc*, the D.C. Circuit addressed and upheld this same identical justification by FERC for the imposition of a one-year durational term on a certificate of public convenience and necessity pursuant to a rule of general, not individual, application. The D.C. Circuit stated that, "[t]he decision to review individual certificates periodically is reasonably related to FERC's concern *to assure nondiscriminatory access to transportation.*" The Circuit then went on to say that, *"[a]s to the precise interval selected, we have no cause to second guess the Commission's expert judgment,* and we recognize that on questions of this order, 'a certain amount of arbitrariness goes with the territory.'" *New Jersey Zinc*, 843 F.2d at 1501 (emphasis added) (citation omitted). We likewise should not second guess FERC's experienced and reasoned judgment in this area.

Accordingly, I respectfully dissent from the majority's opinion which does no more

than effectively substitute its preferred view for the "expert judgment" of FERC.